IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARCELL C. BENNETT, | ) | |
| | ) | |
| Plaintiff, | ) | 8:04cv285 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| DOUGLAS COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on filing no. 41, the Motion for Summary Judgment filed by the defendant, Douglas County, Nebraska. The County operates the Douglas County Correctional Center ("DCCC") where the plaintiff, Marcell C. Bennett, was in custody as a pretrial detainee during 2004.[1] In filing no. 46, the plaintiff objects to the defendant's summary judgment motion.

### Summary Judgment Standard

Summary judgment is "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327(1986). The court must examine the record in the light most favorable to the nonmoving party. See, e.g., Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

The proponent of a motion for summary judgment "bears the initial responsibility of

---

[1]The plaintiff is presently serving a sentence in a federal prison.

1

informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. at 323.  In response, the opponent must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original).  A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts."  Id. at 586.

"[T]he mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment as a matter of law .... Instead, 'the dispute must be outcome determinative under prevailing law.'"  Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citations omitted).  Accord Dico, Inc. v. Amoco Oil Co., 340 F.3d 525, 529 (8th Cir. 2003).  "If the evidence is merely colorable ... or is not sufficiently probative ... summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

The court may not weigh the evidence, determine credibility, or decide the truth of any factual matter in dispute.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; Tatum v. City of Berkeley, 408 F.3d 543, 549 (8th Cir. 2005).  However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.

## Background

The record indicates that Douglas County houses federal pretrial detainees and federal witnesses at DCCC pursuant to an agreement with the U.S. Marshal Service.  Part

2

of the agreement involves a separation or "keep separate" policy, i.e., instructions from the U.S. Marshal to "keep separate" certain federal witnesses housed at DCCC from the federal defendants against whom such witnesses will be testifying.

The plaintiff asserts federal civil rights claims pursuant to 42 U.S.C. § 1983, alleging that, while he was a detainee at DCCC, he suffered injury as a result of the defendant's failure to keep him separate from Sterling McKoy, another federal detainee at DCCC. The U.S. Marshal had placed McKoy and the plaintiff on a keep separate list, and the plaintiff sustained injury when McKoy attacked him after DCCC staff placed them in the same housing unit.   The plaintiff contends that the defendant has a custom or policy of failing to honor keep separate agreements, notwithstanding the obvious risk to the detainees whom the Marshals are trying to protect, and that the defendant violated the Eighth Amendment to the U.S. Constitution by failing to keep the plaintiff separate from McKoy.

### Exhaustion of Remedies

42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies before a prisoner files suit in federal court about conditions or events in prison.  42 U.S.C. § 1997e(a) states:   "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) means that if grievance procedures were available to the plaintiff at DCCC, and the plaintiff did not use the available grievance procedures before filing this lawsuit, the plaintiff's claims are subject to dismissal without prejudice.

On the other hand, the purposes for exhaustion cannot be served if grievance

3

procedures are in reality unavailable to a prospective plaintiff.  See, e.g., Lyon v. Vande Krol, 305 F.3d 806, 808-09 (8th Cir. 2002): "For instance, in Foulk v. Charrier, 262 F.3d 687, 697-98 (8th Cir. 2001), [the Eighth Circuit] concluded that the district court lacked a sufficient factual basis to find that an inmate had failed to exhaust his administrative remedies when prison officials had refused to respond to his informal resolution request that he completed to satisfy the requirements of the first part of the prison's three-part grievance process.  In Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001), [the Eighth Circuit] similarly held that an inmate was prevented from exhausting his administrative remedies when prison officials failed to respond to his requests for grievance forms, and that the inmate's failure to exhaust those remedies was not a bar to suit because they were not 'available' to him."

The defendant argues that the plaintiff has not established exhaustion of administrative remedies.  In particular, the defendant complains that the plaintiff omits any reference to an appeal of his grievance to the Chief Deputy of DCCC.  However, it is the court's understanding that there has been no official bearing the title of Chief Deputy at DCCC since the departure of Ann O'Connor in 2002.  Any problem with the lack of administrative appeals may be traceable to the defendant's failure to update the DCCC Handbook to reflect current realities.

It is the defendant's responsibility to establish that the plaintiff failed to complete exhaustion of administrative remedies.  "[R]eliance upon the PLRA exhaustion requirement is an affirmative defense under Fed. R. Civ. P. 8(c)."  Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001).  "It is the burden of the defendant asserting this affirmative defense to plead and prove it."  Id.  Accord Casanova v. Dubois, 304 F.3d 75, 78 n.3 (1st Cir. 2002):  "[T]he

4

vast majority of circuit courts have characterized PLRA exhaustion as an affirmative defense."   See also <u>Lyon v. Vande Krol</u>, 305 F.3d 806, 809 (8th Cir. 2002):   "[I]t is the burden of the defendant in a case such as this to show that a plaintiff prisoner failed to exhaust all available administrative remedies under the PLRA." If the Handbook misleads inmates by offering them an option to appeal to an official who does not exist, it is not surprising that they do not exercise that option.[2]

Thus, the defendant has not established the absence of any genuine issue of material fact regarding its affirmative defense based on 42 U.S.C. § 1997e(a).   The record does not clearly establish that exhaustion of administrative remedies at DCCC consisted of more than the initial grievance filed by the plaintiff after McKoy first attacked him.

### Eighth Amendment

It is true that "[p]ersons involuntarily confined by the state have a constitutional right to safe conditions of confinement."  <u>Osolinski v. Kane</u>, 92 F.3d 934, 938 (9th Cir. 1996). However, "[n]ot every deviation from ideally safe conditions amounts to a constitutional violation."  <u>Id</u>.   The Eighth Amendment's prohibition against cruel and unusual punishment can be violated by a failure to take reasonable measures to guarantee the safety of an inmate from violence by other prisoners.  See, e.g., <u>Pagels v. Morrison</u>, 335 F.3d 736, 740 (8th Cir. 2003):  "The Supreme Court has held that the Eighth Amendment requires prison officials to take 'reasonable measures to guarantee the safety of inmates [and] ... to protect

---

[2]In addition, taking judicial notice of the court's records, I note that in a number of cases involving inmates at DCCC, a Captain or acting director at DCCC has testified that he has been "unable to locate" any grievance filed by the plaintiff.  Subsequently, the plaintiff has produced a copy of the grievance in question.  See, e.g., Case Nos. 4:03cv3369 and 8:04cv202 in this court.  Unfortunately, this kind of problem renders DCCC's "inability to locate" grievances less than persuasive evidence of failure to exhaust.

prisoners from violence at the hands of other prisoners.' <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33 ... (1994) (internal quotation marks and citations omitted)."

To prevail on an Eighth Amendment failure-to-protect claim, the plaintiff must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm and (2) the defendant subjectively knew of and disregarded an excessive risk to the plaintiff's safety. <u>Smith v. Arkansas Dep't of Correction</u>, 103 F.3d 637, 644 (8th Cir. 1996); <u>Jensen v. Clarke</u>, 73 F.3d 808, 810 (8th Cir. 1996).

In order to satisfy the second part of a failure-to-protect claim, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Pagels v. Morrison</u>, 335 F.3d 736, 740 (8th Cir. 2003), *citing* <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). In other words, "[a] government official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." <u>Berry v. Sherman</u>, 365 F.3d 631, 634 (8th Cir. 2004).

Negligence by a defendant does not suffice to establish deliberate indifference. See, e.g., <u>Pagels v. Morrison</u>, 335 F.3d 736, 742 (8th Cir. 2003) ("negligence cannot give rise to an Eighth Amendment failure-to-protect claim"); <u>Tucker v. Evans</u>, 276 F.3d 999, 1002 (8th Cir. 2002) (negligence, even gross negligence, is insufficient to prove a violation of the Eighth Amendment). Deliberate indifference requires the reckless or callous disregard of a known, excessive risk of serious harm to the safety of the plaintiff or other inmates in the plaintiff's position. <u>Tucker v. Evans</u>, 276 F.3d 999, 1001 (8th Cir. 2002).

The plaintiff has not demonstrated the "equivalent of criminal recklessness," <u>Fisher v. Lovejoy</u>, 414 F.3d 659, 662 (7th Cir. 2005), which is the exacting standard for deliberate

indifference.  In response to the plaintiff's Motion to Compel, Magistrate Judge F. A. Gossett ordered the defendant to serve on the plaintiff and file with the court "a copy of every 'keep separate' request, directive or order (or anything similar or any notes of the same) received from the U.S. Marshal Service or any other federal entity by Douglas County, Nebraska, Douglas County Department of Corrections or the Douglas County Correctional Center ('DCCC') concerning the plaintiff (during any time the plaintiff was incarcerated at DCCC.  The defendant shall also serve on the plaintiff and file with the court the same kind of order(s), requests and directives received by the same entity or entities regarding Sterling McKoy."  (Filing no. 61.)

The defendant has complied (filing nos.  62 and 63) with Magistrate Judge Gossett's Order.  As a result, the evidence received from the U.S. Marshal (filing nos. 63-3 and 63-4) indicate that the only "keep separate" instructions involving the plaintiff and McKoy were sent by the Marshal on June 9, 2004 and December 28, 2004, both **after** McKoy had already attacked the plaintiff.[3]

Now that the plaintiff's discovery requests have been properly answered, the record contains no facts giving rise to an inference of deliberate indifference to the plaintiff's safety.  Instead, the record suggests a mere failure to prevent a "surprise attack" by another inmate.  See, e.g., <u>Tucker v. Evans</u>, 276 F.3d 999, 1001 (8th Cir. 2002): "We have held in several cases that qualified immunity for prison officials is appropriate when an Eighth Amendment failure-to-protect claim arises from inmate injuries resulting from a

---

[3]The only grievance the plaintiff contends that he filed was dated June 4, 2004 and reported an attack by McKoy on or before that date.  June 4, 2004 preceded any pertinent "keep separate" message from the U.S. Marshal by approximately five days.

surprise attack by another inmate."   See also <u>Jackson v. Everett</u>, 140 F.3d 1149, 1152 (8th Cir. 1998): "An 'official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.'"

Even if the plaintiff could establish negligence, the U.S. Constitution does not protect citizens against the negligence of their public officials.  The Eighth Amendment to the Constitution is violated by "deliberate indifference" to, or "wanton disregard" of, an individual's rights.  Claims based on negligence, on the other hand, are the province of state and local tort claims laws.   The plaintiff has failed to demonstrate that a genuine issue of material fact remains for trial on his Eighth Amendment claim.

THEREFORE, IT IS ORDERED:

1.      That filing no. 41, the defendant's Motion for Summary Judgment, is granted;

2.      That filing no. 46, the plaintiff's objection to the defendant's summary judgment motion, is denied; and

3.      That judgment will be entered accordingly.

DATED this 30th day of June, 2006.

BY THE COURT:

s/Joseph F. Bataillon_____
JOSEPH F. BATAILLON
Chief District Judge